

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00100-CR

CHARLES RAY PENIGAR  APPELLANT

V.

THE STATE OF TEXAS  STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
## TRIAL COURT NO. 1424061D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Charles Ray Penigar appeals his conviction for failing to comply with sexual-offender registration requirements.  In three points, Penigar argues that the judgment incorrectly states that he was convicted of a first-degree felony; that the jury charge erroneously contains a prior conviction as an element of the

---

[1]*See* Tex. R. App. P. 47.4.

instant offense; and that Texas Local Government Code section 133.102(a)(1), under which Penigar was assessed a $133 "consolidated court cost," is facially unconstitutional. Because the judgment incorrectly lists the felony offense level as a first-degree felony, we will modify the judgment to reflect that Penigar was convicted of a third-degree felony and affirm the judgment as modified.

## II. BACKGROUND

In 1988, Penigar was convicted of sexual assault of a child and was placed on probation for six years. Two years later, Penigar's probation was revoked for failing to report to his probation officer, and he was sentenced to six years' imprisonment.

Due to his conviction for sexual assault of a child, Penigar was required to register as a sex offender for life and to annually verify his registration during a sixty-day window running from thirty days before to thirty days after his birthday. *See* Tex. Code Crim. Proc. Ann. art. 62.101(a)(1) (West Supp. 2016) (setting forth lifetime registration requirement); *see also id.* art. 62.001(5), (6) (West Supp. 2016) (providing definitions of terms used in article 62.101). Because Penigar's birthday is December 9, he was required to verify his registration between November 9 and January 8 each year. Penigar began his annual registration as a sex offender in 1998. In 2007, Penigar was convicted for failing to comply with his sexual offender registration requirements and was sentenced to two years' confinement.

In the current case, a jury convicted Penigar of failing to comply with his sexual offender registration requirements after he failed to verify his registration in 2014. The jury also found that Penigar was a habitual offender, having been previously convicted of possession in December 1991 and in July 2000. The trial court sentenced Penigar to thirty years' imprisonment. Penigar then perfected this appeal.

### III. ERROR IN THE JUDGMENT

In his first point, Penigar argues that the judgment incorrectly states that he was convicted of a first-degree felony. The State agrees that the judgment incorrectly classifies the felony offense level and that the judgment should be modified.

Here, Penigar was charged with failing to report to the local law enforcement authority or to verify his sexual-offender registration on or about January 9, 2015. The failure to annually verify sexual offender registration is a third-degree felony, which is punishable by imprisonment for not more than ten years or less than two years. *Id.* art. 62.102(b)(2) (West Supp. 2016); Tex. Penal Code Ann. § 12.34(a) (West 2011). Penigar's prior failure-to-register conviction from 2007 does not increase the severity level or grade of the current offense; instead, it increases only the punishment level of the current offense. *See* Tex. Code Crim. Proc. Ann. art. 62.102(c); Tex. Penal Code Ann. § 12.33(a) (West 2011) (stating that punishment range for a second-degree felony is imprisonment for not more than twenty years or less than two years); *Ford v. State*, 334 S.W.3d

3

230, 234–35 (Tex. Crim. App. 2011). Moreover, the jury's habitual-offender finding—that Penigar is a habitual offender due to his two prior possession convictions from 1991 and 2000—increased the punishment range to twenty-five to ninety-nine years' or life imprisonment, but the habitual-offender finding did not increase the felony offense level. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2016).

Accordingly, we hold that the judgment incorrectly classifies the felony offense level as a first-degree felony, we modify the judgment to reflect that Penigar was convicted of a third-degree felony,[2] and we sustain Penigar's first point. *See* Tex. R. App. P. 43.2(b); *Garza v. State*, 298 S.W.3d 837, 845 (Tex. App.—Amarillo 2009, no pet.) (modifying judgment to correct felony offense level).

## IV. THE JURY CHARGE ERROR DOES NOT CONSTITUTE EGREGIOUS HARM

In his second point, Penigar argues that the jury charge improperly included his prior conviction for failing to register as a sex offender as an element of the current offense. Penigar further argues that he suffered egregious harm due to the defective charge.

---

[2]Penigar does not challenge the legality of his thirty-year sentence, which falls within the punishment range after his punishment was enhanced due to the habitual-offender finding. *See id.*

4

## A. Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact specific and must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at

5

172).  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  *Almanza*, 686 S.W.2d at 174.

## B.  The Law on Using Prior Convictions to Enhance Punishment

A prior conviction for failing to register as a sex offender increases the punishment level of the current offense to the next highest degree of felony.  Tex. Code Crim. Proc. Ann. art. 62.102(c).   A prior conviction alleged for enhancement "is not really a component element of the primary offense" but is instead a historical fact to show the persistence of the accused and the futility of ordinary measures of punishment as related to him.  *Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim. App. 2005).  An enhancement increases the punishment range to a certain range above that ordinarily prescribed for the indicted crime. *Id.*  It does not change the offense, or the degree of the offense, of conviction. *Id.*  There can be no enhancement until a person is first convicted of an offense of a certain degree.  *Id.* at 233–34.

## C.  Error in the Charge

Here, Penigar complains of the following application paragraph that the trial court included in the jury charge at guilt-innocence:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of January, 2015, in Tarrant County, Texas, Charles Ray Penigar, did then and there intentionally or knowingly fail to report to the local law enforcement authority, to-wit: the police department of the City of Fort Worth, Texas, to register or verify registration under the sex offender registration program of Chapter 62 Texas Code of Criminal Procedure not earlier than the 30[th] day before and not later than the 30[th] day after the anniversary of the defendant's date of birth to verify the information in the

6

registration form maintained by said law enforcement authority, and the defendant had a reportable conviction or adjudication namely, sexual assault, in Cause Number 0328153, on the 22nd day of February, 1990, in the 297th District Court of Tarrant County, Texas, and said defendant's duty to register expires under Article 62.101(a), of the Texas Code of Criminal Procedure[], *and you further find that prior to the commission of the offense or offenses set out above the said defendant had been convicted of an offense under Article 62, Texas Code of Criminal Procedure, to-wit: failure to register as a sex offender, in Cause Number 1067661D, on the 26th day of November, 2007, in the Criminal District Court Number One, of Tarrant County, Texas,* then you will find the defendant guilty of failure to register as a sex offender with prior conviction for failure to register as a sex offender as charged in the indictment. [Emphasis added.]

Here, the State concedes that the inclusion of Penigar's prior failure-to-register conviction in the guilt-innocence charge as a component element of the offense was error because "[t]here can be no enhancement until a person is first convicted of an offense of a certain degree." *See id.*

### D. The *Almanza* Factors Weigh Against a Finding of Egregious Harm

Because Penigar stated that he had no objections to the charge, we will reverse only if the error resulted in egregious harm. *See Nava*, 415 S.W.3d at 298; *Almanza*, 686 S.W.2d at 171. Here, the jury charge held the State to a higher burden than that required by article 62.102 because in order for the jury to find Penigar guilty, the State was required to prove beyond a reasonable doubt that Penigar had failed to comply with sex offender registration requirements in 2015 and in 2007. The state of the evidence from the trial revealed that Penigar was convicted of sexual assault of a child in 1988; that sexual assault of a child is a reportable conviction requiring lifetime registration; that Penigar was required to

7

report between November 9, 2014, and January 8, 2015; that Penigar knew of his duty to register annually; that Penigar had made an appointment to complete his annual registration verification; and that Penigar did not show up for his appointment or make any contact with the Fort Worth Police Department prior to his arrest on an outstanding warrant in August 2015. The evidence therefore conclusively established Penigar's current failure-to-register violation. *See Tatum v. State*, 431 S.W.3d 839, 843 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding evidence sufficient to support conviction for failure to register). During closing argument, Penigar's counsel reiterated Penigar's testimony during which he had "fully admitted" that he had previously failed to register in 2007. The State made clear during its final closing argument that the current trial was "not about punishing [Penigar] for . . . failing to register before [in 2007]" and that it had only put on evidence of the 2007 conviction for failing to comply with sex offender registration requirements because the State believed that the prior conviction was an element of the current offense. With regard to other relevant information, the record demonstrates that both the State and the defense referenced the 2007 failure-to-register conviction during voir dire, treating it as if it were an element of the current offense from the outset of the trial. Having examined the four *Almanza* factors, we conclude that the erroneous inclusion of Penigar's prior failure-to-register conviction, which increased the State's burden, did not egregiously harm Penigar. *See* 686 S.W.2d at 171; *Jackson v. State*, 285 S.W.3d 181, 184 (Tex. App.—Texarkana 2009, no pet.) ("[G]iven the fact that the

8

jury had already been made aware of all this information from the very outset of the trial, it is difficult to imagine how a later delivery of the same information by including it in the charge on guilt/innocence could be harmful."). Accordingly, we overrule Penigar's second point.

## V. TEXAS LOCAL GOVERNMENT CODE SECTION 133.102(A)(1) IS NOT FACIALLY UNCONSTITUTIONAL

In his third point, Penigar argues that section 133.102(a)(1) of the Texas Local Government Code, under which a $133 "consolidated court cost" was assessed against him, is facially unconstitutional. Specifically, Penigar argues that the assessment of the $133 "consolidated court cost" against him violates the Separation of Powers Clause of the Texas constitution.

The State argues that Penigar waived his right to challenge the imposed consolidated court cost—a nonsystemic, nonpenal challenge—because he raises it for the first time on appeal. But we conclude, as we have in the past, that Penigar may raise his complaint on appeal, even though he did not raise it to the trial court, because the $133 "consolidated court cost" was not imposed in open court or itemized in the judgment. *See, e.g.*, *Ingram v. State*, No. 02-16-00157-CR, 2016 WL 6900908, at *2 (Tex. App.—Fort Worth Nov. 23, 2016, pet. filed); *Rogers v. State*, No. 02-16-00047-CR, 2016 WL 4491228, at *1 (Tex. App.—Fort Worth Aug. 26, 2016, pet. filed) (mem. op., not designated for publication) (both cases relying on *London v. State*, 490 S.W.3d 503, 506–07 (Tex. Crim. App.

2016)). But even though Penigar did not waive his argument, it is unavailing in light of this court's recent holding in *Ingram*. *See* 2016 WL 6900908, at *3.

The $133 "consolidated court cost" at issue was authorized by the local government code. Tex. Loc. Gov't Code Ann. § 133.102(a)(1) (West Supp. 2016). With his facial challenge, Penigar has the burden to establish this statute's unconstitutionality. *See Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1188 (2016). To successfully do so, Penigar must establish that no set of circumstances exists under which this statute would be valid. *See id.* We look for an interpretation that supports and upholds a statute's constitutionality unless the contrary interpretation is clearly shown. *See id.* Regarding statutes authorizing the imposition of court costs against criminal defendants, the court of criminal appeals has specified that for such statutes to pass constitutional muster, they must "provide[] for an allocation of . . . court costs to be expended for legitimate criminal justice purposes," which are ones that "relate[] to the administration of our criminal justice system." *Id.* at 517–18.

Regarding section 133.102(a)(1)'s $133 "consolidated court cost," Penigar asserts that three of the fourteen prescribed percentage allocations for the $133 are not legitimate criminal-justice purposes. Specifically, he points to (1) the allocation of 5.0034% to "law enforcement officers standards and education," which is now collected into an account in the general revenue fund; (2) the allocation of 9.8218% to "comprehensive rehabilitation," which is spent at the

10

direction of an agency in the executive branch; and (3) the allocation of 0.0088% to a fund for "abused children's counseling" with no statutory direction to which State account the percentage should be directed. *See* Tex. Loc. Gov't Code Ann. § 133.102(e)(1), (5), (6). We follow our decision in *Ingram* in which we concluded, as have other courts of appeals, that these three enumerated designated uses as written are related to the administration of the criminal justice system and that the legislature's directive to the comptroller to disburse those monies from the general revenue fund for those uses passes constitutional muster. *See* 2016 WL 6900908, at *3 (citing *Salinas v. State*, 485 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2016, pet. granted); *Penright v. State*, 477 S.W.3d 494, 497–500 (Tex. App.—Houston [1st Dist.] 2015, pet. granted); *Denton v. State*, 478 S.W.3d 848, 851–52 (Tex. App.—Amarillo 2015, pet. ref'd) (concluding section 133.102 did not violate Takings Clause of Texas constitution)). Accordingly, Penigar has failed to carry his burden to establish that section 133.102 cannot operate constitutionally under any circumstance, i.e., that the statute is invalid in all possible applications. *See id.* (citing *McAfee v. State*, 467 S.W.3d 622, 645–47 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd); *O'Bannon v. State*, 435 S.W.3d 378, 381–82 (Tex. App.—Houston [14th Dist.] 2014, no pet.)).

We overrule Penigar's third point.

## VI. CONCLUSION

Having sustained Penigar's first point, we modify the judgment to reflect that Penigar was convicted of a third-degree felony. Having overruled Penigar's remaining points, we affirm the judgment as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER and MEIER, JJ.; KERRY FITZGERALD (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 22, 2016